UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.W., *a minor, by and through her mother*, NEKAIYA WILSON, and NEKAIYA WILSON,<br><br>                                        Plaintiffs,<br><br>v.<br><br>CARLSBAD UNIFIED SCHOOL DISTRICT, et al.,<br><br>                                        Defendants. | Case No.: 25cv649-JES (DEB)<br><br>**[REDACTED] REPORT AND RECOMMENDATION FOR ORDER GRANTING JOINT MOTION FOR APPROVAL OF MINOR'S COMPROMISE [ECF NO. 48]** |

Before the Court is the parties' December 23, 2025, Joint Motion for Approval of Minor's Compromise ("Joint Motion"). (See ECF No. 48.)[1] This Report and Recommendation is submitted to United States District Judge James E. Simmons pursuant to 28 U.S.C. §636(b)(1) and Civil Local Rule 17.1 of the United States District Court for the Southern District of California. After reviewing the Joint Motion and for

---

[1] The parties lodged an unredacted version of the Joint Motion to the Court via e-mail on January 9, 2026. On February 26, 2026, the Court granted Defendant Carlsbad Educational Foundation's Motion to Seal and ordered the parties to file an unredacted version of the Joint Motion, including the full settlement agreements. (See ECF No. 50 at 2–3.)

1

the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** the Joint Motion.

## I.    BACKGROUND

### A.    Procedural History

On March 20, 2025, Plaintiff K.W. ("Minor Plaintiff"), by and through her mother, Nekaiya Wilson, and Plaintiff Nekaiya Wilson ("Ms. Wilson") (collectively "Plaintiffs") initiated this action against Carlsbad Unified School District ("CUSD") and Carlsbad Educational Foundation ("CEF") (collectively, "Defendants").  (ECF No. 1.)  On July 1, 2025, Plaintiffs filed the operative Second Amended Complaint ("SAC").  (ECF No. 22.)  In the SAC, Plaintiffs bring the following causes of action against CUSD for violations of: (1) Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); (2) Title II of the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101 et seq.); (3) 42 U.S.C. §1983; (4) California Education Code §§ 220 and 234.1; (5) California Government Code § 11135; (6) California tort claims of battery, negligence, negligent hiring and supervision, failure to protect, and failure to accommodate; (7) Title IX; (8) Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.); and (9) 42 U.S.C. § 1988.  (Id. at 21–22).  Plaintiffs also assert that CEF violated: (1) Section 504 of the Rehabilitation Act and (2) Title II of the ADA.  (Id. at 25.)  On August 19, 2025, and August 20, 2025, CEF and CUSD filed their respective Answers to the SAC.  (ECF Nos. 27 & 29.)

On September 12, 2025, Magistrate Judge Daniel E. Butcher held an Early Neutral Evaluation, which resulted in a settlement.  (ECF No. 38.)  On October 31, 2025, the matter was assigned to the undersigned to fulfill the special duty of the Court to safeguard the interests of the minor.  (ECF No. 41.)  After various extensions, the parties filed the instant Joint Motion on December 23, 2025.  (ECF No. 48.)

### B.    Factual Background

This matter arises from various incidents Minor Plaintiff allegedly experienced while enrolled as a student of CUSD and CEF programs; Plaintiffs allege these incidents also caused Ms. Wilson to experience emotional and financial struggles.  (See generally

ECF No. 22 at 3–24.)  Around September 30, 2024, Minor Plaintiff, a Black child, was diagnosed with Autism Spectrum Disorder; Attention Deficit Hyperactivity Disorder; Specific Learning Disorders with Impairment in Math, Reading, and Written Expression; and Developmental Coordination Disorder.  (Id. at 3.)  Defendants do not admit fault and deny all allegations made by Plaintiffs, as well as Plaintiffs' description and characterization of events precipitating the lawsuit and harm allegedly suffered by Plaintiffs.  (ECF No. 48 at 4, 13.)  The following facts are taken from Plaintiffs' Second Amended Complaint [ECF No. 22] and the instant Joint Motion [ECF No. 48].

### 1.  Plaintiffs' allegations against Defendant CUSD

Minor Plaintiff generally alleges she "experienced race-based and disability-based bullying and mistreatment by staff and classmates at school[] while attending CUSD." (ECF No. 48 at 4.)  Further, Minor Plaintiff alleges she was "denied the peer-reviewed and research-based behavior support she required to address her autism."  (Id.)  As a result, Ms. Wilson "suffered emotionally for fear of her child's wellbeing" and financially by sacrificing time she would have otherwise spent on her own professional advancement.  (Id. at 4–5.)

#### a.  Altercations with CUSD staff

Minor Plaintiff alleges she was physically assaulted by CUSD teachers several times.  On September 4, 2024, a teacher allegedly grabbed Minor Plaintiff's wrist, yelled at her, and yanked her out of the classroom.  (Id. at 5.)  On January 27, 2025, another teacher allegedly tightly grabbed Minor Plaintiff's arm, refused to let go when Minor Plaintiff asked, and escorted her to the Principal's office, where she remained for the rest of the day.  (Id. at 9.)  On March 5, 2025, Minor Plaintiff alleges a teacher attempted to confiscate pencils she was rolling on a table.  (Id.)  This escalated into a physical altercation—the teacher "tried to snatch the table from [Minor Plaintiff] and it fell to the ground"—and concluded with the teacher threatening to "call the cops."  (Id.)

///

///

### b. Unsupervised internet usage

During class on January 14, 2025, after Ms. Wilson had requested that Minor Plaintiff not be allowed online without one-on-one supervision, Minor Plaintiff allegedly went onto Omegle, an online platform that allows users to chat with strangers. (Id. at 8–9.) While on the platform, she came across two inappropriate videos of individuals engaging in sexual acts. (Id.) On April 17, 2025, CUSD allegedly notified Ms. Wilson that Minor Plaintiff was engaging in inappropriate online activity on her school device, including searching for sensory toys and looking up "masterbate." (Id. at 11.)

### c. Chocolate allergy incidents

Minor Plaintiff alleges she was subjected to repeated chocolate allergy violations while at CUSD. In October 2024, Minor Plaintiff allegedly consumed chocolate at school and broke out in hives, requiring a trip to the school nurse. (Id. at 6–7.) The nurse did not notify Ms. Wilson, and she only became aware of the incident after picking up Minor Plaintiff from aftercare and noticing her symptoms. (Id.) On January 16, 2025, a substitute teacher allegedly gave Minor Plaintiff chocolate in class even though Ms. Wilson had previously informed the Health Office that she was allergic to chocolate. (Id. at 9.) In response, the Principal replied that the substitute was not aware of all the steps needed to ensure everyone was aware of Minor Plaintiff's allergy. (Id.)

### d. Unsupervised release from school

Ms. Wilson would sometimes allow Minor Plaintiff to walk home alone when she could "keep an eye out for her." (Id. at 10.) However, on March 10, 2025, Plaintiffs allege that CUSD released Minor Plaintiff from school and allowed her to walk home alone without Ms. Wilson's knowledge, thereby exposing her to "grave danger." (Id.) On March 16, 2025, CUSD again released Minor Plaintiff from school without Ms. Wilson's knowledge, and Ms. Wilson was not home when Minor Plaintiff arrived. (Id.)

### e. Interactions with CUSD students

Minor Plaintiff also experienced physical and verbal altercations with other students. In early December 2024, Plaintiffs allege that students repeatedly directed

unkind, hurtful, and racially motivated comments toward Minor Plaintiff.  (Id. at 7.)  After Plaintiffs raised concerns to the Principal and requested action, CUSD provided an "educational other means of correction" statement, which Plaintiffs claim misinformed students about the history of slavery and racism, among other issues.  (Id. at 7–8.)  A few days later, CUSD staff allegedly required Minor Plaintiff to acknowledge how she had caused another student to call her the "N-word," and CUSD asked both students to sign a "Friendship Agreement."  (Id. at 8.)

On April 3, 2025, a female student allegedly sexually assaulted Minor Plaintiff and Plaintiffs claim CUSD failed to investigate the incident within a reasonable time.  (Id. at 10–11.)  Later, on April 14, 2025, Minor Plaintiff and another student allegedly got into a verbal and physical altercation, which involved pinching and pulling hair.  (Id.)  After the students were separated and brought to the Principal's office, Minor Plaintiff spoke of getting "revenge."  (Id.)  When Minor Plaintiff located where the other student was waiting, she made repeated efforts to "kick[] the door and attempt[] to unlock it."  (Id.)  Plaintiffs allege that if Minor Plaintiff was provided the appropriate behavior support to address her autism, this incident and Minor Plaintiff's subsequent behavior could have been avoided.  (Id.)  Additionally, in August 2025, Minor Plaintiff became aware that another student, a child of a CUSD office employee, allegedly spread rumors about Minor Plaintiff being previously expelled and having violent tendencies.  (Id.)

### f.  Discrimination based on race and disability

Plaintiffs also allege that Minor Plaintiff was unfairly treated due to her disability and race.  On February 6, 2025, CUSD allegedly banned Minor Plaintiff from attending the Lego Club at school because her autistic behavior required a "1:1 behavior support CUSD was unwilling to provide."  (Id. at 9.)  On April 16, 2025, Ms. Wilson complained to the Principal that Minor Plaintiff was the only child suspended after the aforementioned incidents, despite other students being involved.  (Id. at 11.)  Plaintiffs claim that Minor Plaintiff was treated differently due to her blackness.  (Id.)

///

### g. Ms. Wilson's emotional and financial harms

Due to Minor Plaintiff's difficulties, Plaintiffs allege Ms. Wilson's "days became consumed with advocating for [Minor Plaintiff's] proper treatment and disability support at school." (Id. at 5.)  Additionally, Plaintiffs allege Ms. Wilson's concerns regarding her daughter's emotional and physical well-being caused Ms. Wilson to experience a panic attack and seek medical care.  (Id.)  Plaintiffs claim Ms. Wilson had to withdraw from her cybersecurity analyst certification course in September 2024 due to spending so much time addressing Minor Plaintiff's situation.  (Id.)  Further, Plaintiffs allege Ms. Wilson's withdrawal from this course caused: (1) direct financial loss of learning materials, (2) a substantial lost income opportunity because of the certification delay, (3) a disruption to her career trajectory, and (4) the suspension of contractual benefits under the GSA Global Security Agency agreement.  (Id. at 6.)

### 2.    Plaintiffs' allegations against Defendant CEF

Plaintiffs further allege that Minor Plaintiff did not receive individualized Applied Behavior Analysis ("ABA") support for her autism when attending CEF's after-school program on the CUSD campus.  (Id. at 12.)  On January 13, 2025, the CEF Area Manager ("Manager") allegedly sent Ms. Wilson a "Behavior Support Plan" requiring one-on-one behavior modification support for Minor Plaintiff and noting that if Minor Plaintiff's disruptive behavior continued, Minor Plaintiff would be removed from the Kids Care Program ("Kids Care").  (Id.)  On January 15, 2025, CEF removed Minor Plaintiff from the Program.  (Id.)  Ms. Wilson requested Minor Plaintiff be provided with ABA support so she could return to Kids Care; however, the Manager notified Ms. Wilson it would be best for Minor Plaintiff to develop a relationship with her ABA therapist before returning and that an ABA therapist needed to accompany Minor Plaintiff upon her return.  (Id.)  Realizing that her insurance would not cover ABA support, Ms. Wilson requested that CEF provide the assistance and CEF refused.  (Id.)  Minor Plaintiff could not return to Kids Care, which Plaintiffs allege resulted in the deterioration of Minor Plaintiff's mental health.  (Id. at 12–13.)

## C. Settlement Terms

Minor Plaintiff (by and through her guardian ad litem, Ms. Wilson), Ms. Wilson, and Defendants CUSD and CEF (collectively, "the Parties") have agreed to settle these claims without trial pursuant to the following terms. (Id. at 4, 20.) Defendants agree to pay ███████ to Plaintiffs, with CUSD to provide $150,000.00 and CEF to provide ███████ (Id. at 20.) The Parties explain that the $150,000.00 to be paid by CUSD includes payment to Minor Plaintiff, Ms. Wilson, and attorneys' fees and costs to the Law Office of Andréa Marcus, APC. (Id.) ████████████████████████████ ███ (Id.) The proposed distribution from CUSD is: Minor Plaintiff: $90,000.00; Ms. Wilson: $22,500.00; and Law Office of Andréa Marcus, APC: $37,500.00 (representing twenty-five percent of $150,000.00). (Id. at 20–21.) The proposed distribution from CEF is: ████████████████████████████████████████ ██████████████████████████ (Id. at 21.) The Parties propose distribution of Minor Plaintiff's net settlement by two protected mechanisms: (1) a ███████ deposit into a Bank of America blocked, court-restricted account pursuant to California Rule of Court 7.953, and corresponding Probate Code protections; and (2) a ███████ deposit into Minor Plaintiff's California Achieving a Better Life Experience ("CalABLE") account, governed by 26 U.S.C. § 529A and Cal. Gov't Code §§ 100500–100522, to allow for qualified disability-related savings. (Id. at 21–23.) Minor Plaintiff's net recovery is ███████, while Ms. Wilson's net recovery is ███████ (Id. at 25.)

## II.    LEGAL STANDARD

Civil Local Rule 17.1 governs settlements for minors. It provides that, "[n]o action by or on behalf of a minor . . . , or in which a minor . . . has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." See CivLR 17.1(a). It further mandates that, "[a]ll settlements and compromises must be reviewed by a magistrate judge before any order of approval will issue." Id. This rule implements the court's special duty to safeguard the interests of

7

25cv649-JES (DEB)

minor litigants in the context of civil settlements.  See Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011); Fed. R. Civ. P. 17(c).  The Ninth Circuit has held this duty obliges the court to "conduct its own inquiry to determine whether the settlement serves the best interest of the minor."  Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)).  The "court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, . . . even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir. 1983) (internal citations omitted).

District courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases."  Robidoux, 638 F.3d at 1181–82.  Courts should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard."  Id. at 1182 (citing Dacanay, 573 F.2d at 1078).  "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties."  Id.

Notably, the Ninth Circuit expressly limited Robidoux to "cases involving the settlement of a minor's *federal* claims."  Id. at 1179 n.2 (emphasis added).  Where a settlement involves state law claims, district courts have generally applied state law rather than the Robidoux framework.  See, e.g., DeRuyver v. Omni La Costa Resort & Spa, LLC, No. 3:17-CV-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); J.T. v. Tehachapi Unified Sch. Dist., No. 1:16-CV-01492-DAD-JLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019); A.M.L. v. Cernaianu, LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases).  Under California law, the court is tasked

25cv649-JES (DEB)

with evaluating the "reasonableness of the settlement" and "whether the compromise is in the best interests of the minor." A.M.L., 2014 WL 12588992, at *3. The California Probate Code provides the applicable statutory scheme for compromises involving minors. See Cal. Prob. Code §§ 3600 et seq. The court has broad discretion "to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." Goldberg v. Super. Ct., 23 Cal. App. 4th 1378, 1382 (1994) (assessing Cal. Prob. Code § 3601). Because Minor Plaintiff's claims are brought under both federal and California law, and to ensure all potentially relevant factors are considered, the Court will review the settlement under both the federal law ("fair and reasonable") and state law ("best interests") standards. Robidoux, 638 F.3d at 1181; Anderson v. Latimer, 166 Cal. App. 3d 667, 676 (1985).

### III.    DISCUSSION

#### A. Settlement is Fair, Reasonable, and in Minor Plaintiff's Best Interests

As stated above, this Court focuses its review on "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181–82. Moreover, California law emphasizes protecting "the best interests of the minor." Anderson, 166 Cal. App. 3d at 676. Accordingly, the Court will assess whether Minor Plaintiff's net recovery of ███████ is fair, reasonable, and in Minor Plaintiff's best interests. After a thorough review, the Court finds that it is.

The gross settlement amount is ███████, consisting of $150,000.00 paid by CUSD and ███████ paid by CEF. (ECF No. 48 at 20.) After accounting for attorneys' fees—███████ (twenty-five percent of the gross settlement amount), $37,500.00 of which CUSD is paying—and Ms. Wilson's recovery—███████, $22,500.00 of which CUSD is paying—Minor Plaintiff's net recovery will be ███████, $90,000.00 of which CUSD is paying. (Id. at 25.) The Joint Motion includes examples of court-approved settlements in Eastern District of California cases that resulted in lower net recoveries for the minor plaintiffs, as compared to the proposed net recovery for Minor Plaintiff

here.  (Id. at 28–29.)  The Court has reviewed these cases and performed its own independent review of cases involving similar facts and finds that Minor Plaintiff's net recovery is fair and reasonable under the circumstances.  See, e.g., L.T. v. Eleanor Murray Fallon Middle Sch., No. 24-CV-00110-TSH, 2025 WL 1616641, at *2–*3 (N.D. Cal. June 6, 2025) (finding fair and reasonable a $74,749.38 net recovery for a twelve-year old minor who was repeatedly called racial slurs at school); E.P. v. Tehachapi Unified Sch. Dist., No. 1:23-CV-01724-CBD, 2025 WL 832808, at *3–*5 (E.D. Cal. Mar. 17, 2025) (finding fair and reasonable a $100,000.00 net recovery for a minor diagnosed with autism, who alleged a teacher verbally, physically, and emotionally abused him); Gonzalez v. Chula Vista Elementary Sch. Dist., No. 21-CV-1314-L-DDL, 2024 WL 1466784, at *2–*3 (S.D. Cal. Apr. 3, 2024) (finding fair and reasonable a $99,000.00 net recovery divided amongst four neurodivergent minors who alleged physical harm, fear of physical harm, and verbal abuse by a teacher); Vasquez v. Richland Sch. Dist., No. 1:19-CV-0327 JLT, 2021 WL 168343, at *3–*4 (E.D. Cal. Jan. 19, 2021) (finding fair and reasonable a $37,651.66 net recovery for a fifth grade student who alleged a teacher used threatening language and was physically abusive at school).  Thus, review of analogous settlements in educational settings demonstrates that Minor Plaintiff's net recovery here is fair and reasonable, thereby satisfying the Robidoux standard.

Additionally, the proposed settlement is in Minor Plaintiff's best interests because it eliminates the cost, risk, and time commitment of pursuing the case to trial.  The settlement provides Minor Plaintiff with compensation comparable to that obtained in similar actions and the certainty of recovery, rather than the uncertainty associated with a jury verdict.  Furthermore, the settlement will allow Ms. Wilson to hire ABA experts "to teach [Minor Plaintiff] neuro-typical behaviors and social communication norms" and pay for "recreational activities[] where [Minor Plaintiff] can utilize the ABA support so she can learn the pro-social behaviors . . . that she needs . . . to succeed in the school setting, and to pursue independent living and further education upon graduation."  (ECF

No. 48 at 29.)  Thus, this Court finds that Minor Plaintiff's net recovery of ▌▌▌▌ is also in Minor Plaintiff's best interests, satisfying California law.

**B. Attorneys' Fees and Costs**

The Court must also review the attorneys' fees and costs to be paid for the representation of Minor Plaintiff.  See Cal. Prob. Code § 3601; see also CivLR 17.1(a).  Where counsel represents a minor on a contingency basis, attorneys' fees are generally limited to twenty-five percent of the gross recovery.  See, e.g., Gonzalez, 2024 WL 1466784, at *3; D.C. v. Modesto City Schs., No. 1:22-CV-01481-HBK, 2023 WL 6060044, at *5–*6 (E.D. Cal. Sept. 18, 2023); L.P. v. Bella Mente Montessori Acad., No. 3:23-CV-01166-LL-AHG, 2023 WL 4908833, at *5 (S.D. Cal. Aug. 1, 2023).  To determine whether the fees are reasonable, the Court may consider factors including: the involvement and circumstances of the minor with a disability; the novelty and difficulty of the legal services performed; the amount involved and the results obtained; the risk of loss borne by counsel; and the informed consent of the minor's representative to the fees.  See Cal. Rule of Ct. 7.955; Cal. Prob. Code § 3601.

As noted in the settlement terms, "Plaintiffs' attorney's fees and all other expenses will be reimbursed from the proceeds of the settlement."  (ECF No. 48 at 21.)  Plaintiffs' counsel requests ▌▌▌▌, exactly twenty-five percent of the gross settlement proceeds.  (Id. at 25.)  In an accompanying exhibit, Plaintiffs' counsel provides a detailed breakdown of their legal services and expenses provided from March to December 2025.  (See ECF No. 48-8.)  Based on the duration of this case, the specialization required to represent a minor in a case of this nature, the amount of work performed by Plaintiffs' counsel, and the request's adherence to the twenty-five percent limit historically applied by courts, the undersigned finds the requested attorneys' fees to be reasonable.

**C. Disbursement of Funds**

Civil Local Rule 17.1 requires that "[m]oney or property recovered by a minor . . . California resident by settlement or judgment must be paid and disbursed in accordance

with California Probate Code § 3600, et seq."  CivLR 17.1(b)(1).  Pursuant to the California Probate Code, settlement funds for a minor may be disbursed through various authorized methods.  See Cal. Prob. Code § 3600 et seq.  Here, Plaintiffs request that Minor Plaintiff's settlement be distributed through two separate protected mechanisms: (1) deposit into a court-restricted, blocked account and (2) deposit into Minor Plaintiff's CalABLE account, "to allow for qualified disability-related savings consistent with federal and state law." (ECF No. 48 at 21.)  First, Plaintiff proposes that ████ of Minor Plaintiff's settlement proceeds be placed in a blocked account set up in Minor Plaintiff's name at Bank of America.  (Id. at 21–22.)  No withdrawals are allowed until Minor Plaintiff reaches the age of eighteen, unless otherwise authorized by this Court.  (Id.)  Second, Plaintiffs propose the remaining ████ of Minor Plaintiff's settlement proceeds be placed into Minor Plaintiff's CalABLE account, "permitting savings for individuals with disabilities without affecting eligibility for public benefits, subject to statutory contribution limits," with the proceeds exclusively used for "qualified disability expenses." (Id. at 22–23.)  Plaintiffs note this amount "falls within the federally permitted annual contribution limit" for this type of account.  (Id. at 23.)  The account will be held in Minor Plaintiff's name, with a parent acting as her authorized legal representative.  (Id.)

This procedure for disposition of the funds—placing a portion of the settlement in a court-restricted account and setting aside the remainder of the proceeds into a CalABLE account for approved disability expenses—is consistent with the California Probate Code.  Specifically, Section 3611(b) and (c) authorizes the court, if it is in the best interest of the minor, to order the settlement funds to be deposited "in an insured account in a financial institution in this state . . . subject to withdrawal only upon the authorization of the court" [Cal. Prob. Code §3611(b)] and to allow "the remaining balance of any money . . . [to] be paid to a special needs trust . . . for the benefit of the minor . . . with a disability" [Cal. Prob. Code §3611(c)].  Accordingly, the Court finds the manner of distribution is fair, reasonable, and within the bounds of applicable law.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds the proposed settlement to be a fair and reasonable resolution of this case in the best interests of Minor Plaintiff, under both federal and state law.  **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) **ADOPTING** this Report and Recommendation and (2) **GRANTING** the Joint Motion for Approval of Minor's Compromise [ECF No. 48].

Pursuant to 28 U.S.C. § 636(b)(1)(C), any party may file written objections with the District Court and serve a copy on all parties on or before **March 16, 2026**.  The document should be captioned "Objection to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **March 23, 2026**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991). The undersigned notes that the Joint Motion in this case is unopposed.  (See ECF No. 48.)  Therefore, **if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately**, to allow the Court to adopt this Report and Recommendation without further delay.  However, there shall be no adverse consequences to any party who files objections or otherwise chooses not to waive the objections period.

**IT IS SO ORDERED**.

Dated:  March 2, 2026

_____

Honorable Michael S. Berg
United States Magistrate Judge

13